**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **LEONTYNE COOPER,** ) | |
| ) | |
| **Plaintiff,** ) | **Case: 1:25-cv-02514** |
| ) | |
| **v.** ) | |
| ) | |
| **UNIVERSITY OF ILLINOIS HOSPITAL,** ) | |
| ) | **Jury Trial Demanded** |
| **Defendant.** ) | |
| ) | |

## COMPLAINT

Plaintiff, Leontyne Cooper ("Plaintiff"), by and through the undersigned counsel, hereby files this Complaint against University of Illinois Hospital ("Defendant"), and in support states as follows:

## NATURE OF PLAINTIFF'S CLAIMS

1.    This lawsuit arises under the Civil Rights Act of 1964, as amended, 42 U.S.C. §1981 ("Section 1981") and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq*. ("Title VII"), seeking redress for Defendant's race-based discrimination, race-based harassment, and retaliation under Title VII.

## JURISDICTION AND VENUE

2.    Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331.

3.    Venue of this action properly lies in the Northern District of Illinois Eastern Division, pursuant to 28 U.S.C. §1391(b) insofar as Defendant operates and transacts business in this judicial district and the events giving rise to Plaintiff's claims occurred within this District.

## ADMINISTRATIVE PREREQUISITES

4. All conditions precedent have been fulfilled or been complied with.

5. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") (attached hereto as Exhibit "A").

6. Plaintiff received a Notice of Right to Sue from the EEOC (attached hereto as Exhibit "B").

7. This Complaint has been filed within ninety (90) days of his receipt of the EEOC's Dismissal and Notice of Right to Sue.

## THE PARTIES

8. At all times material to the allegations of this Complaint, Plaintiff, Leontyne Cooper, resides in Cook County, Illinois.

9. At all times material to the allegations in this Complaint, Defendant, University of Illinois Hospital, is a hospital doing business in and Cook County, Illinois, whose address is 1740 West Taylor Street, Chicago, Illinois 60612.

10. Plaintiff was employed by Defendant as an "employee" within the meaning of 42 U.S.C §2000e(f).

11. During the applicable limitations period, Defendant has had at least fifteen employees, has been an "employer" as defined by Title VII, and has been engaged in an industry affecting commerce within the meaning of Title VII, 42 U.S.C. § 2000e(b).

## BACKGROUND FACTS

12. Plaintiff worked for Defendant as a Medical Assistant from in or around September 2024 until she was wrongfully terminated in or around December 2024, on the basis of her race.

13. Since at least September 2024, through December 2024, Defendant has subjected

Plaintiff to different terms and conditions of employment than others not within her protected class and has been subjected to a hostile work environment on the basis of race, violating Title VII and Section 1981.

14. Plaintiff is African American and is a member of a protected class because of her race whom Defendant subjected to different terms and conditions of employment than others not within her protected class.

15. When Plaintiff first began with Defendant, she was met with an environment of racial hostility and discrimination.

16. On Plaintiff's very first day after orientation, a co-worker issued a warning: "Cindy fires every Black girl she hires."

17. Plaintiff was immediately alarmed to hear that her supervisor, Cindy, allegedly fires African American employees, but was told dismissively that she "should be fine."

18. The next day, a white co-worker brazenly told Plaintiff that she was "fortunate" to have been hired.

19. When Plaintiff asserted that she had earned her position through her credentials, not luck, the co-worker pointed out that there were no African American women in the department.

20. These statements sent a clear and disturbing message, African American employees were neither welcome nor expected to last.

21. Troubled by the racially charged comments and exclusionary culture, Plaintiff took swift action and reported the discrimination to Defendant's Human Resources ("HR") Department.

22. Rather than addressing Plaintiff's concerns, HR actively discouraged her from pursuing justice.

23. During her meeting with HR, an African American male representative warned her,

"My advice is to be quiet, because they fire people over things like that."

24. At that point, Plaintiff asked who she could speak with because she wanted to transfer departments.

25. The Caucasian female representative dismissed Plaintiff's complaints and simply told her to speak with her recruiter.

26. Desperate for relief, Plaintiff contacted her recruiter, only to be told she could not transfer departments for six months.

27. When Plaintiff explained the discriminatory treatment she faced, Plaintiff was advised to contact the Office of Access and Equity.

28. Plaintiff formally reported the racial discrimination between on or around October 13 through 17, 2024 and was assured that an investigation would take place.

29. Almost immediately after filing her complaint, Plaintiff became the target of retaliation.

30. In November 2024, Plaintiff received a fabricated performance evaluation that contained negative scores, but, tellingly, included only positive written comments.

31. This evaluation came as a complete shock.

32. Plaintiff had never been counseled, disciplined, or given any indication that her performance was deficient in any way.

33. Recognizing the evaluation as a blatant act of retaliation, Plaintiff lodged a complaint, voicing her concerns.

34. Instead of correcting the injustice, Defendant ignored her and took no action.

35. Plaintiff sought protection from her union, but instead of advocating for her rights, the union refused to file a grievance and callously told her to "get an attorney."

4

36. Defendant's calculated retaliation escalated dramatically.

37. On December 17, 2024, Plaintiff was publicly recognized in the company's employee newspaper for saving a person's life by performing CPR.

38. The very next day, December 18, 2024, Defendant's campaign to terminate Plaintiff reached its final stage.

39. Plaintiff's performance evaluation, originally scheduled for weeks later, was suddenly and inexplicably moved up.

40. This accelerated evaluation, clearly orchestrated in response to Plaintiff's discrimination complaint, resulted in her immediate termination.

41. Defendant's reasoning for termination was that Plaintiff was not a good fit.

42. Plaintiff's termination was not only unjust but also a direct consequence of Defendant receiving the results of the discrimination investigation.

43. Defendant's actions were nothing more than a pretext to eliminate Plaintiff for daring to assert her legal rights.

44. Plaintiff met or exceed Defendant's performance expectations during the entire duration of her employment.

45. Plaintiff was unlawfully terminated because of her race, (African American) in or around December 2024.

46. Plaintiff was retaliated against, and her employment was ultimately terminated for opposing unlawful discrimination and for exercising her protected rights.

47. Plaintiff reported the race-based harassment to Defendant when Plaintiff spoke with the two HR representatives.

48. Plaintiff was targeted for termination because of her race.

49. Plaintiff suffered multiple adverse employment actions including but not limited to being terminated.

50. There is a basis for employer liability for the race-based harassment that Plaintiff was subjected to.

51. Plaintiff can show that she engaged in statutorily protected activity –a necessary component of her retaliation claim- because Plaintiff lodged complaints directly to HR about the harassment.

## COUNT I
### Violation of 42 U.S.C. § 1981
### (Race-Based Discrimination)

52. Plaintiff repeats and re-alleges paragraphs 1-51 as if fully stated herein.

53. Section 1977 of the Revised Statutes, 42 U.S.C. § 1981, as amended, guarantees persons of all races, colors, and national origin the same right to make and enforce contracts, regardless of race, color, or national origin. The term "make and enforce" contracts includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

54. Defendant's conduct against Plaintiff's race amounts to a pattern or practice of systemic race discrimination that constitutes illegal intentional race discrimination in violation of 42 U.S.C. Section 1981.

55. Plaintiff was subjected to and harmed by Defendant's systemic and individual discrimination.

56. Defendant's unlawful conduct resulted in considerable harm and adverse employment actions to Plaintiff and is entitled to all legal and equitable remedies under Section 1981.

57.     As a direct and proximate result of the race-based discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation and loss of enjoyment of life.

**COUNT II**
**Violation of Title VII of the Civil Rights Act of 1964**
**(Race-Based Discrimination)**

58.     Plaintiff repeats and re-alleges paragraphs 1-51 as if fully stated herein.

59.     By virtue of the conduct alleged herein, Defendant intentionally discriminated against Plaintiff based of Plaintiff's race, in violation of the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.

60.     Plaintiff met or exceeded performance expectations.

61.     Plaintiff was treated less favorably than similarly situated employees outside of Plaintiff's protected class.

62.     Defendant terminated Plaintiff's employment on the basis of Plaintiff's race.

63.     Plaintiff is a member of a protected class under the Title VII, due to Plaintiff's race.

64.     Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

65.     As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation and loss of enjoyment of life.

**COUNT III**
**Violation of Title VII of The Civil Rights Act of 1964**
**(Retaliation)**

66.     Plaintiff repeats and re-alleges paragraphs 1-51 as if fully stated herein.

67.     Plaintiff is a member of a protected class under 42 U.S.C. § 2000e, *et seq.*

68.     During Plaintiff's employment with Defendant, Plaintiff reasonably complained to Defendant about conduct that constituted race discrimination or race-based harassment.

69.     As such, Plaintiff engaged in protected conduct and was protected against unlawful retaliation by Defendant under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*

70.     In response to Plaintiff's complaint, Defendant failed to conduct a prompt, thorough and objective investigation of Plaintiff's complaint of race discrimination or harassment.

71.     Defendant also failed to take necessary precautions to prevent further recurrences of the discriminatory and harassing conduct complained of by Plaintiff.

72.     Plaintiff suffered an adverse employment action in retaliation for engaging in protected activity.

73.     By virtue of the foregoing, Defendant retaliated against Plaintiff based on Plaintiff's reporting the race-based discrimination or harassment, thereby violating Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq*.

74.     Defendant's retaliatory conduct toward Plaintiff illustrated a willful and/or reckless violation of Title VII.

75.     As a direct and proximate result of the above-alleged willful and/or reckless acts of Defendant, Plaintiff has suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

### **RELIEF REQUESTED**

WHEREFORE, Plaintiff respectfully requests that this Court find in Plaintiff's favor and

8

against Defendant as follows:

       a.     Back pay with interest;

       b.     Payment of interest on all back pay recoverable;

       c.     Compensatory and punitive damages;

       d.     Reasonable attorneys' fees and costs;

       e.     Award pre-judgment interest if applicable; and

       f.     Award Plaintiff any and all other such relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests that all issues be submitted to and determined by a jury.

Dated this 10th day of March 2025.

/s/ *Chad W. Eisenback*
**CHAD W. EISENBACK, ESQ.**
IL Bar No.: 6340657
**SULAIMAN LAW GROUP LTD.**
2500 S. Highland Avenue, Suite 200
Lombard, Illinois 60148
Phone (331) 307 - 7632
Fax (630) 575 - 8188
ceisenback@sulaimanlaw.com
*Attorney for Plaintiff*